[MONROE GENERAL TERM, September 6, 1869. *E. Darwin Smith, Dwight* and *Johnson,* Justices.]

---

## VAN VALKENBURGH and WARD *vs.* THAYER.

The plaintiffs' sheep broke out of the lot where they were grazing, and mingled with the sheep of the defendant, which were being driven along the highway, without any fault on the defendant's part. All he did was to allow them to go along the highway with his flock to his own premises where they could be conveniently yarded and separated. On arriving at the defendant's premises the plaintiffs' sheep were separated, and turned into the highway and driven towards the place where they mingled with the defendant's flock. *Held* that upon these facts there was nothing to justify the conclusion that the defendant either unlawfully took the sheep in question, or converted them to his own use.

APPEAL by the defendant from a judgment entered upon the report of a referee.

The action was brought to recover the value of twenty-

seven sheep, alleged to have been wrongfully taken by the defendant and converted to his own use. The referee found the following facts:

That on the 5th day of August, 1868, the plaintiffs were the owners of twenty-seven fat sheep, which were depasturing on lands of the plaintiff Van Valkenburgh, situate in the town of Le Roy, and inclosed with an ordinary fence. That on the day last aforesaid, the defendant was driving his own sheep, 150 in number, in and along the highway adjoining Van Valkenburgh's lot, when the plaintiffs' sheep escaped over the fence into the highway and intermixed with the defendant's sheep, without any fault of the defendant. That the defendant made no effort to separate the sheep, but drove them, so intermixed, two miles to his own farm, where he yarded and separated them and turned the plaintiffs' sheep into the highway and drove them back to within one hundred and thirty rods of the place where they had intermixed, and left them in the highway. That on the day following the plaintiffs made search for their sheep unsuccessfully, and the same were lost to them. The value of said sheep was $79.50.

Upon the foregoing facts the referee found, as a conclusion of law, that the defendant was liable to the plaintiffs for the value of said sheep, and he ordered judgment in favor of said plaintiffs, and against the defendant, for $79.50.

*D. J. Bissell,* for the appellant.

I. This is an action of *trepass de bonis,* based solely upon a wrongful taking. And no proof of a demand and refusal, or of a subsequent conversion, is competent in the case, or will warrant a recovery. (1 *Cowen's Tr.* 305. 8 *Wend.* 474. 1 *Bos. & Pul.* 404. 5 *Man. & Grang.* 760. 18 *John.* 283, *Spencer, J.* 2 *Selwyn,* 841. 1 *Bing.* 213. 21 *Barb.* 589.)

II. The case cannot be sustained upon the ground of the defendant's negligence. 1. It will not be pretended,

in treating of this action, that the defendant has been guilty of a *misfeasance,* or the perpetration of any positive forcible act by which the property was injured or destroyed. It can only be claimed as a case of *nonfeasance,* that is, the failure to perform some act or duty which he owes in the premises.   Now, it is well settled that "in order to entitle the plaintiff to maintain this action in the instance of non-feasance, there must be some trust to which the law annexes a duty to take care of the goods.   For when a man is the mere finder of goods, he is under no legal obligation to keep them safely, or exercise any degree of care about them.   (1 *Cowen's Tr.* 349, 350.   *Cro. Eliz.* 219.) "As, if he find garments, and by negligent keeping they are moth-eaten, or find goods and loses them again, or a horse and gives him no sustenance, or find butter and lets it putrify by negligent keeping," &c.

III. Negligence in any degree, is but an omission of duty, and where there is no legal duty there can be no such thing as negligence.  (*Tonawanda Railroad Co.* v. *Munger,* 5 *Denio,* 255.   4 *N. Y. Rep.* 349; *S. C. affirmed.*) Cattle escaping from the owner's inclosure into the highway against his will, are not lawfully going at large within the meaning of the statute, and this, notwithstanding a town regulation authorizing it.  (*Beardsley, J.,* 5 *Denio,* 263.)   1. An action for negligence cannot be sustained if the act of the plaintiff, negligent or willful, coöperated with the misconduct of the defendant to produce the damages sustained.  (*Id.* 265, *and cases cited.*)   2. These sheep had no right in the highway; their being there must be deemed through the negligence of the plaintiff, and this contributed to their subsequent loss.   The court say (*Id.* 267) " the plaintiff was bound, at his peril, to keep his cattle at home," &c.  (*Vide also Story on Bail.* §§ 19, 22; 3 *Denio,* 236; 1 *Cowen,* '78, *Strays;* *Brownell* v. *Flagler,* 5 *Hill,* 282.)   " One who complains of the negligence of another must himself be without fault."  (*Cook* v. *Champlain Tr.*

Van Valkenburgh *v.* Thayer.

*Co.*, 1 *Denio*, 99.) *Bush* v. *Brainard*, (1 *Cowen*, 78,) and *Blythe* v. *Topham*, (*Cro. Jac.* 158, 9,) were both cases where animals strayed; in the one case upon the uninclosed woodland of the defendant; in the other upon the commons, and in each case were injured by the wrongful act or negligence of the defendant; and the courts say, "the plaintiff showing no right why his property should be there, his loss is *damnum absque injuria.*" (19 *Wend.* 401, *and cases cited.*) 3. The question is not which party is most to blame, but has one party suffered damages from the fault of the other, without having contributed thereto by his own fault, or want of ordinary care and prudence. (*Clark* v. *Kirwan*, 4 *E. D. Smith*, 21. *Vide also Bowman* v. *T. and B. Railroad*, 37 *Barb.* 516; *Hartfield* v. *Roper*, 21 *Wend.* 622, *Cowen, J.*) "If cattle are in the street without any one to attend them, it is a degree of carelessness in the owner which would preclude his recovery of damages arising from mere inattention of a traveler." 4. So if a child be in the highway unattended, of such tender years as to be unable to take care of itself, and be there run over without the willful negligence of the defendant, no recovery can be had. (*Id.* 619.) 5. It is a well settled principle of the law of bailments that no person can be made a depositary without his knowledge and consent, nor can he have the duties and responsibilities appertaining thereto forced upon him against his will. (*Waite's Dig.* 309, "*Depositum.*" *Lethbridge* v. *Phillips*, 2 *Starkey*, 544. *Edson* v. *Weston*, 7 *Cowen*, 278.) 6. The owner of property must take care and intrust his property to the care of safe depositaries, and if goods are lost by the gross carelessness of such depositaries, the owner must sustain the loss. (*Waite's Dig.* 311.) 7. Notice should have been given to the tenant when these sheep were placed in the pasture by the plaintiffs, and their failure in this respect was negligence.

*T. P. Heddon,* for the respondents.

I. The defendant saw the sheep escape and intermingle with his own flock. He was fully aware of the escape of the sheep, and where they escaped from. If separation at the place was not practicable, the defendant having driven the sheep away, was bound to return them to the place from whence they were driven, after separation was had. Failing to do this, he is answerable for the value of the property as for conversion. " One lawfully in possession of property, who wrongfully parts with possession, to the injury of the owner, is liable in trover for conversion." (*Spencer* v. *Blackman,* 9 *Wend.* 167. *Murray* v. *Burling,* 10 *John.* 172–175.) " A slight interference of the defendant with the property makes him liable in trover." (*Farrar* v. *Chauffetete,* 5 *Denio,* 527–532.) The least the defendant could do was to return the preperty to the place where it came to his control. (*Carruthers* v. *Hollis,* 8 *Adol. & Ellis,* 113.) In *Cutter* v. *Fanning,* (2 *Clark's Iowa Rep.* 580,) the precise question involved in the case at bar was decided in favor of a recovery. At page 591 the court say : " If the plaintiff's sheep mixed with the defendant's drove, *by the plaintiff's neglect,* and the defendant did use due diligence in separating them, and could not succeed, he would not be liable without a demand and refusal. If, however, he subsequently negatived the plaintiff's right to the property, or did any act which was inconsistent with such right, the conversion would be complete." Also, on same page, the court further say : "An offer to return the sheep at Davenport, or at any distance from the plaintiff's residence, or from where the sheep were taken, would not bar the action." (*See also Brownell* v. *Flagler,* 5 *Hill,* 282.)

II. The defendant, by driving the sheep a distance of two miles without any attempt to separate them, was guilty of conversion. But if not, and they were separated at the earliest and nearest available time and place, then he is answerable for conversion in this, that when he as-

Van Valkenburgh *v.* Thayer.

sumed to undertake the return of the sheep he was legally bound to see that it was done. Leaving the sheep a half mile from where they were taken, charges him with a conversion when loss follows. "To maintain an action for the wrongful conversion of property, it is enough that the rightful owner has been deprived of it by the unauthorized act of another assuming dominion over it." (*Boyce* v. *Brockway*, 31 *N. Y. Rep.* 490. *Cobb* v. *Dows*, 9 *Barb.* 231–242.) The sheep were left in the angle of the road east of Tillou's house, when last seen by the defendant's agents, and were going from the lot where they escaped. Thayer's direction was to drive them up as far as they would go; if they went toward the farm, all right; if they went the other way, all right. There was no direction or effort to return the sheep to the place from whence they escaped. The assumption of control over the sheep after the defendant had separated them from his flock, by driving them along the highway and leaving them 130 rods from where they were taken, charges him with the responsibility of their loss. Nothing short of returning them to the possession of the plaintiffs could relieve him. (*Cutter* v. *Fanning*, 2 *Clark's Iowa Rep.* 580–591.)

III. The pretense of the defendant that the loss of these sheep occurred through the plaintiffs' negligence, is entirely without foundation. The referee refused so to find, and there was no testimony to justify the finding of negligence on the part of the plaintiffs. The plaintiffs put the sheep in question on their own premises. These premises were properly inclosed. The plaintiffs were under no obligations to inform any one they had placed the sheep there. "In the exercise of his lawful right, every man has the right to act on the belief that every other person will perform his duty and obey the law." (*Jetter* v. *N. Y. and Harlem Railroad Co.*, 2 *Keyes*, 154.) These sheep escaping from the plaintiffs' premises with the knowledge of the defendant, his duty was to separate

them there or return them to the lot when separated. The plaintiffs used due diligence in searching for the sheep, as soon as they ascertained their loss. The pretense of negligence on the part of the plaintiffs is absurd. No sensible standpoint for the defendant's claim of negligence can be seen short of this, that the plaintiff had no business to own the sheep; if they had not owned them they would not have lost them. There is no possible relation between any act of the plaintiffs and that of the defendant in driving the sheep away, upon which negligence can be inferred. The plaintiffs' acts do not stand in proximate or remote relation to anything done by the defendant. (*Savage* v. *The Corn Fire Ins. Co.*, 3 *Trans. Rep.* 112–115. *Haley* v. *Earle*, 30 *N. Y. Rep.* 208–210.) The negligence of the plaintiffs, if any existed, must have been such as to have been the assisting or prevailing cause of injury.

*By the Court,* JOHNSON, J. The action was for the unlawful taking, by the defendant, of the plaintiffs' sheep, and converting the same to his own use. Upon the undisputed facts of this case, and upon the facts found by the referee, there is nothing to justify the conclusion that the defendant either unlawfully took the sheep in question, or converted them to his own use. The testimony all shows, without any contradiction, and so the referee finds, that the plaintiffs' sheep broke out of the lot and mingled with the sheep of the defendant, which were being driven along the highway, without any fault on the defendant's part. All he did was to allow them to go along the highway with his flock to his own premises, where they could be conveniently yarded and separated. This was done immediately, by the defendant, on arriving at his premises. The plaintiffs' sheep were separated and turned into the highway, and driven in the direction of the place from which they had escaped when they mingled with the defendant's flock. Clearly here

Van Valkenburgh *v.* Thayer.

was no unlawful taking. The possession which the defendant was compelled to have for the time being, of the property, against his will, was, under the circumstances, justifiable and lawful. The possession, while it continued, being lawful, was there a conversion afterwards? Clearly there has been no illegal detention, or intermeddling with, or exercise of dominion over, the property, by the defendant in any way subversive of the rights of the owners. All the defendants acts were with a view to get rid of the property and free himself from it, not to convert it to his own use. It is not found, nor can it be pretended, from the evidence, that the sheep could have been conveniently separated in the highway. It was no unlawful exercise of right, or dominion, on the part of the defendant, to take them to his yard merely for the purpose of getting them out of his flock. He did not even know or suspect, as the testimony clearly shows, that the sheep belonged to the plaintiffs. On the contrary, he had been informed by the person in charge of the farm, that they were stray sheep, which he supposed had come "from the other road," upon the farm. There was no reason, therefore, to induce, or require, the defendant to return the animals to the exact point at which they had intruded themselves into his flock. He had just seen the plaintiffs' agent at the farm, trying to drive the sheep from the premises. He did in fact drive them to within one hundred and thirty rods of the point where they mingled with his flock, and, as I understand the evidence, to the " other road," through which the sheep were supposed to have come, and there left them, in order that they might find their way home.

It is quite apparent that the defendant acted in entire good faith in doing what he did, and neither wished nor attempted to do anything to interfere with the rights of the owner of the property, whoever he might be.

The subsequent demands made by the plaintiffs were

o'f no avail, as they were made at a time when it was known the sheep were out of the defendant's pessession. The defendant never became the plaintiffs' bailee of the property. His possession, such as it was, was forced upon him, and only continued until a separation from his own flock could be conveniently and properly effected.

The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[FOURTH JUDICIAL DEPARTMENT, GENERAL TERM, at Buffalo, June 6, 1870. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]